**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| LORI DAVENPORT<br>109 Deverill Street<br>Ludlow, Kentucky 41016,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LUDLOW, KENTUCKY<br>51 Elm Street<br>Ludlow, Kentucky 41016;<br><br>OFFICER JUSTIN EDWARDS (Badge No. 723),<br>in his individual and in his official capacity as a<br>police officer of the City of Ludlow;<br><br>CHIEF BARTHOLOMEW T. BECK,<br>in his individual and in his official capacity as<br>Chief of Police of the City of Ludlow;<br><br>PATRICK GROTE,<br>in his individual capacity;<br><br>JULIE NAVARRE,<br>in her individual capacity;<br><br>SARAH THOMPSON,<br>in her individual capacity,<br><br>Defendants. | Case No. ______________________<br><br>Judge ________________________<br><br>**COMPLAINT WITH JURY DEMAND** |

## COMPLAINT WITH JURY DEMAND

Plaintiff Lori Davenport, by and through counsel, for her Complaint against Defendants, states as follows:

## I. INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 arising from the retaliatory arrest and baseless prosecution of Lori Davenport, a former Ludlow City Councilwoman and outspoken critic of the City of Ludlow's government, for her constitutionally protected speech.

2. In the weeks before her arrest, Ms. Davenport used her public Facebook account to publish documented criticism of City officials directed not just generally at them, but including specific instances of violations of the law and misconduct, including the Kentucky Attorney General's formal determination that City Administrator Scott Smith's simultaneous service as Police Chief and City Administrator was incompatible and illegal under KRS 61.080, and a Kentucky Public Pension Authority investigation finding that Mr. Smith received two salaries without paying sufficient amounts into the pension system.

3. Because of those posts, a sitting Councilwoman—Defendant Julie Navarre, whom Ms. Davenport had criticized by name that very day—summoned police to attend the August 28, 2025 special meeting of the Ludlow City Council, specifically naming Ms. Davenport.

4. At that meeting, Ms. Davenport spoke during public comment, criticized City officials in sharp and at times profane terms, was twice warned, and then voluntarily got up and left the council chambers on her own. She touched no one, threatened no one, and physically obstructed nothing.

5. After she had already exited the chambers, and while she stood in the entryway of the city building, Ms. Davenport was arrested by Defendant Officer Justin Edwards and charged with Obstructing Governmental Operations under KRS 519.020—a statute that, by its plain text, requires the use or threatened use of "violence, force or physical interference," none of which occurred or was even alleged in the officer's own narrative.

6. The Commonwealth thereafter abandoned the KRS 519.020 charge by amendment, and on November 3, 2025, dismissed the amended charge with prejudice—unilaterally, without any stipulation of probable cause, without diversion, and without any release of civil claims.

7. Ms. Davenport brings this action for First Amendment retaliation, Fourth Amendment false arrest and malicious prosecution, municipal liability, supplemental state-law claims, and seeks compensatory and punitive damages, attorney's fees under 42 U.S.C. § 1988, and all other appropriate relief.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), because those claims arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

9. This Court has supplemental jurisdiction over Plaintiff's Kentucky state-law claims under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy.

10. Venue is proper in this District and Division under 28 U.S.C. § 1391(b), because all Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in Kenton County, Kentucky, within the Northern Division at Covington.

## III. PARTIES

11. Plaintiff Lori Davenport is a resident of Ludlow, Kenton County, Kentucky. She is a former member of the Ludlow City Council and an active civic participant and critic of the current City administration. She is a citizen of the United States.

12. Defendant City of Ludlow, Kentucky (the "City") is a municipal corporation organized under the laws of the Commonwealth of Kentucky. The City operates the Ludlow Police Department and enacts and enforces the City's ordinances, including Ordinance 2025-11.

13. Defendant Justin Edwards (Badge No. 723) is, and was at all relevant times, a police officer employed by the City of Ludlow. Officer Edwards arrested Ms. Davenport on August 28, 2025, and issued Citation No. FA65533 charging her under KRS 519.020. He is sued in his individual and official capacities. At all relevant times he acted under color of state law.

14. Defendant Bartholomew T. Beck is, and was at all relevant times, the Chief of Police of the City of Ludlow and a final policymaker for the City with respect to law enforcement. Chief Beck ratified and championed the arrest and prosecution of Ms. Davenport, including by his October 17, 2025 letter to the Kenton County Attorney urging continued prosecution after the prosecutor had identified the legal defects in the case. He is sued in his individual and official capacities. At all relevant times he acted under color of state law.

15. Defendant Patrick Grote is, and was at all relevant times, the City Attorney of the City of Ludlow. At the August 28, 2025 meeting, Mr. Grote effectively presided over and ran the meeting in the absence of a mayor,[1] personally issued warnings to Ms. Davenport from the floor, and participated in the decision to remove and arrest her. Mr. Grote was himself a named target of Ms. Davenport's protected speech and criticism directed at him for illegal actions and misconduct. He is sued in his individual capacity. At all relevant times he acted under color of state law and in an administrative, not advocative, capacity. Irrespective of whether he was on the payroll of Ludlow or a contractor, his actions at the meeting involved the usage of traditional public government powers and in any event, as the facts set forth, for the actions complained of

[1] Mayor Chris Wright had resigned from office the preceding day. https://linknky.com/news/2025/08/27/ludlow-mayor-chris-wright-resigns/

he acted in close cooperation with Ludlow government officials to cause the constitutional violations complained of, and/or was providing delegated governmental functions in the running of the meeting.

16. Defendant Julie Navarre is, and was at all relevant times, a member of the Ludlow City Council. Because of Ms. Davenport's social-media posts—including a post published the same day criticizing Navarre by name—Councilwoman Navarre contacted the Ludlow Police Department, requested that an officer be present at the August 28, 2025 meeting, and specifically named Ms. Davenport. She is sued in her individual capacity. At all relevant times she acted under color of state law.

17. Defendant Sarah Thompson is, and was at all relevant times, a member of the Ludlow City Council. On August 28, 2025, she served as acting chair of the meeting, participated in the decision to remove Ms. Davenport, and, moments after Ms. Davenport's arrest, used the floor of the same meeting to publicly attack Ms. Davenport's social-media speech as "misinformation." She was later, on September 11, 2025, appointed Mayor of Ludlow. She is sued in her individual capacity. At all relevant times she acted under color of state law.

## IV. FACTUAL ALLEGATIONS

18. In the months and weeks leading up to August 28, 2025, Ms. Davenport used her public Facebook account to publish a sustained series of posts about matters of public concern in the City of Ludlow.

19. Those posts addressed, among other subjects: (a) the dual employment of Scott Smith as both Police Chief and City Administrator, which the Kentucky Attorney General formally determined in a March 1, 2024 letter to be incompatible and illegal under KRS 61.080; (b) a Kentucky Public Pension Authority ("KPPA") investigation finding that Mr. Smith had

illegally received two salaries without paying sufficient amounts into the pension system; (c) the City's approximately $5 million annual operating budget compared with neighboring municipalities and criticisms of the City’s taxes and spending; (d) the conduct of City Attorney Patrick Grote and his misconduct, including Ms. Davenport's August 25, 2025 statement that “our City Attorney does not give sound legal advice”; (e) named criticism of Council members—including Defendants Navarre and Thompson—for voting to improperly give $42,000 to Mr. Smith; (f) the former Mayor's abrupt resignation on August 27, 2025; and (g) the City's deficient and illegal response to her July 27, 2025 open-records request.

20. Ms. Davenport's posts were supported by primary-source documentation, including the Attorney General's letter, the KPPA investigative report, the City's own open-records response, and the Council's voting records, which she posted for public review.

21. On August 25, 2025, Ms. Davenport posted a detailed account of the Smith dual-employment matter and urged residents to attend the upcoming special meeting: “A special meeting Thursday August 28th at 7pm in Council Chambers. Here is the scoop. Please attend!”

22. On August 28, 2025—the day of the meeting—Ms. Davenport posted a reminder that “The meeting is tonight at 7. Hope you will attend!” In the same period she posted criticism, by name, of Council members Chapman, Navarre, Graszus, and Thompson for approving the $42,000 payment to Mr. Smith.

23. Each of these posts was speech on matters of public concern—the structure, finances, personnel, and integrity of municipal government—occupying the highest rung of First Amendment protection. And each of the Defendants, Edwards, Beck, Grote, Navarre, and Thompson were aware of each and every one of these posts, and, in fact, spoke about these posts

with each other prior to the August 28, 2025 meeting, and conspired with each other to take action against Plaintiff because of these social media posts.

24. According to Chief Beck's own October 17, 2025 letter to the Kenton County Attorney, and demonstrating personal knowledge by Defendants Beck, Grote, Navarre, and Thompson of the protected speech on matters of public concern, in the days leading up to the meeting Ms. Davenport "made social media posts that concerned Councilwoman Navarre, prompting her to request police to attend the meeting."

25. Chief Beck's letter further states that Councilwoman Navarre called Lt. Eastham of the Ludlow Police Department, requested that an officer be present at the meeting, and "specifically named Ms. Davenport."

26. The police presence at the August 28, 2025 meeting was therefore procured by a sitting Councilwoman in direct response to, and because of, Ms. Davenport's constitutionally protected speech criticizing that Councilwoman and other officials.

27. On August 28, 2025, the City held a special City Council meeting at the Ludlow Municipal Center, 51 Elm Street, Ludlow, Kentucky, concerning the proposed settlement of pension-related claims asserted by City Administrator Scott Smith.

28. Mayor Chris Wright had abruptly resigned the day before, on August 27, 2025. The Council appointed Defendant Sarah Thompson as acting chair; in practice, the meeting was largely run by Defendant City Attorney Patrick Grote.

29. The meeting was well attended by residents and was covered by Nathan Granger, a journalist for LINK nky, who photographed and contemporaneously reported the events described below in an article published August 29, 2025.

30. The meeting included a public-comment opportunity at which citizens were permitted to address the Council from the podium. Public comment at a city council meeting is a limited public forum opened by the government for citizen speech.

31. Ms. Davenport addressed the lectern early in the meeting. She described Mr. Smith's simultaneous occupancy of the Police Chief and City Administrator positions as “unethical and immoral” and used profane emphasis in criticizing his pension claims.

32. When Defendant Navarre began to speak, Ms. Davenport interrupted her. Defendant Thompson asked Ms. Davenport to sit down; Ms. Davenport responded with a profane retort and returned to her seat.

33. A second verbal exchange occurred while another attendee was speaking, prompting Defendant Grote to declare from the floor: “Miss Davenport! This is your second warning; I will not issue you another one.”

34. Ms. Davenport responded, “I don't care if you kick me out! This is a bull**** meeting!” Some attendees applauded.

35. Ms. Davenport then got up, of her own volition, and left the council chambers.

36. For the avoidance of all doubt, profanity has, at various times, been tolerated at Ludlow City Council meetings, particularly where the speaker is speaking on viewpoints favored by the City Council or Mayor; on at least seven other occasions in 2025, prior to the incidents herein, individuals used profanity during public comment time without any action by City officials.

37. At no point did Ms. Davenport use violence. At no point did she use force. At no point did she threaten violence or force. At no point did she physically interfere with the meeting, block any doorway, occupy any space she was directed to leave, or touch any person.

38. After Ms. Davenport had exited the council chambers, she was arrested in the entryway of the Ludlow city building by Defendant Officer Justin Edwards.

39. The arrest was photographed by journalist Nathan Granger, whose published photographs show Ms. Davenport being arrested and handcuffed in the building entryway, outside the council chambers, after she had already removed herself from the meeting.

40. By the moment of arrest, any disruption attributable to Ms. Davenport had ceased. She had voluntarily complied with the implicit direction to leave. A person walking out of a meeting is not obstructing it.

41. Officer Edwards's own post-arrest narrative on Citation No. FA65533 states, in full and in substance, that Ms. Davenport was "yelling at council," was warned, "did not comply, got up, continued yelling as she was walking away, and then was arrested," and that she "complied with R/O and was placed in custody."

42. The narrative describes speech, and only speech, including speech on matters of public concern. It describes no violence, no force, no threat, and no physical interference of any kind. It affirmatively confirms that Ms. Davenport was walking away when arrested and that she complied with the arresting officer.

43. Upon information and belief, including follow-on documentation, the decision to arrest Ms. Davenport was made, directed, encouraged, approved, and/or ratified by Defendants Grote, Thompson, Navarre, and Beck, each of whom bore personal or institutional animus toward Ms. Davenport's protected speech. For the avoidance of doubt regarding Officer Edwards, "since World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there

is a reason why any of them should question the validity of that order.'" *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010).

44. Later in the same meeting, after Ms. Davenport had been arrested and removed, Defendant Thompson took the floor and publicly characterized Ms. Davenport's social-media speech as "misinformation," complaining on the record about Ms. Davenport's social-media activity.

45. City Administrator Smith likewise used the occasion to attack Ms. Davenport, accusing her of "flooding the city with records requests and then putting out incomplete information"—that is, treating Ms. Davenport's statutorily protected open-records activity and political speech as misconduct to be punished.

46. These on-the-record, content-based attacks on Ms. Davenport's speech—delivered by the acting chair of the meeting moments after Ms. Davenport's arrest—are direct evidence that the officials who participated in her removal and arrest were motivated by hostility to the content and viewpoint of her speech.

47. Officer Edwards charged Ms. Davenport with a single count of Obstructing Governmental Operations under KRS 519.020, a Class A misdemeanor. The case was docketed as Commonwealth v. Davenport, Case No. 25-M-01492, in Kenton District Court.

48. KRS 519.020(1) provides that a person is guilty of obstructing governmental operations "when he intentionally obstructs, impairs or hinders the performance of a governmental function by using or threatening to use *violence, force or physical interference*."

49. Yelling at a city council is not violence, is not force, and is not physical interference. No fact known to Officer Edwards, or recited in his narrative, or reported by any witness, supplied probable cause to believe Ms. Davenport had violated KRS 519.020.

50. Ms. Davenport was taken into custody, transported, booked, and released on bond the same evening. She retained private criminal defense counsel, to whom she paid $2,500 to defend the charge.

51. On September 16, 2025, after defense counsel had filed a motion for discovery and inspection, the Commonwealth amended the charge from KRS 519.020 to KRS 525.150 (Disrupting Meetings and Processions in the Second Degree), disposing of the KRS 519.020 charge without trial. The amendment constitutes the Commonwealth's acknowledgment that the offense for which Ms. Davenport was actually arrested could not be sustained on the facts.

52. On October 17, 2025, Chief Beck wrote to Kenton County Attorney Stacy Tapke urging the Commonwealth to proceed "with either a plea or a trial." The Chief's letter acknowledged that the County Attorney was considering not moving forward "due to Ms. Davenport's lack of intent to disrupt the formal meeting and the absence of guidance regarding a requirement for the 'group' to be 'outraged' by her disruption."

53. The Chief's letter thus records the prosecutor's own conclusion that the elements of the amended offense were not satisfied—and records the City's chief law-enforcement policymaker lobbying for continued prosecution of a citizen notwithstanding those identified defects.

54. On November 3, 2025, the Commonwealth dismissed the amended KRS 525.150 charge with prejudice, unilaterally and without any stipulation of probable cause, without diversion or deferred prosecution, and without any release or covenant not to sue. Ms. Davenport gave nothing in exchange for the dismissal.

55. The criminal proceeding against Ms. Davenport therefore terminated in her favor without a conviction.

56. On the September 11, 2025 Council agenda—fourteen days after Ms. Davenport's arrest and while her prosecution was pending—the City scheduled the second reading of "Ordinance 2025-11, An Ordinance of the City of Ludlow, in Kenton County, Kentucky, Adding Section 40.29 to the City's Code of Ordinances to Prohibit Falsely Impugning the Reputation of Employees, Residents, or Officers." While this ordinance was applicable to employees and officers of the City, including council members, its timing is significant in that the second reading of this ordinance was delayed to permit employees and city officers to falsely malign Plaintiff prior to its enactment.

57. Upon information and belief, in the ten years preceding August 28, 2025, no other speaker at a Ludlow City Council meeting was arrested for speaking out of turn, interrupting, being "off topic," or engaging in spirited or profane exchanges during public meetings, although such conduct has occurred at Ludlow public meetings. Ms. Davenport—a specifically identified critic of City officials—was singled out for arrest when otherwise similarly situated individuals who had not engaged in her protected speech were not arrested.

58. As a direct and proximate result of Defendants' conduct, Ms. Davenport suffered loss of liberty, emotional distress, humiliation, reputational injury (aggravated by the published photographs of her arrest), out-of-pocket criminal defense costs, and the chilling of her First Amendment activity.

## V. CAUSES OF ACTION

### COUNT I

### 42 U.S.C. § 1983 — First Amendment Retaliation
### (Against Defendants Edwards, Beck, Grote, Navarre, and Thompson)

59. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

60. Ms. Davenport engaged in conduct protected by the First Amendment, including (a) her social-media publications on matters of public concern; (b) her open-records requests; and (c) her spoken criticism of City officials during the public-comment portion of the August 28, 2025 meeting. Profane and caustic criticism of public officials at a public meeting is protected political speech.

61. Defendants took adverse action against Ms. Davenport that would deter a person of ordinary firmness from continuing to engage in protected speech, including summoning police because of her posts, targeting her by name, removing her, arresting her, jailing her, charging her, and lobbying for her continued prosecution.

62. Ms. Davenport's protected speech was a substantial and motivating factor in the adverse actions. The causal chain is direct and documented: Defendant Navarre summoned police specifically because of Ms. Davenport's posts and specifically named her; Defendants Grote and Thompson—both targets of her criticism—directed her removal; Defendant Thompson attacked her speech from the dais minutes after the arrest; and Defendant Beck lobbied the prosecutor to continue the case after the prosecutor identified its defects.

63. The arrest was not supported by probable cause for KRS 519.020 or for any other offense.

64. In the alternative, even if probable cause existed for some offense, objective evidence—including the absence of any comparable arrest of any other speaker at a Ludlow public meeting—establishes that Ms. Davenport was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.

65. Defendants acted under color of state law, intentionally, maliciously, and/or with reckless or callous indifference to Ms. Davenport's clearly established First Amendment rights. It

was clearly established long before August 2025 that a citizen may not be arrested for the content or vehemence of political speech at a public meeting.

66. As a direct and proximate result, Ms. Davenport suffered the injuries and damages described herein and is entitled to compensatory and punitive damages against the individual Defendants.

67. No one can seriously question that, "[a]s a general matter," the First Amendment prohibits government officials from subjecting individuals to "retaliatory actions" after the fact for having engaged in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks omitted); *see also Hartman v. Moore*, 547 U. S. 250, 256 (2006); *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018).

68. Criticizing public officials is plainly and clearly established as protected activity. *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018); *Connick v. Myers*, 461 U.S. 138, 148 (1983); *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) ("[T]he First Amendment right to criticize public officials is well-established . . . . Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983."); *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025); *Blackwell v. Nocerini*, 123 F.4th 479 (6th Cir. 2024); *Rudd v. City of Norton Shores*, 977 F.3d 503, 514 (6th Cir. 2020); *Barrett v. Harrington*, 130 F.3d 246, 262 (6th Cir. 1997).

69. Likewise, petitioning government officials for redress is clearly established. *Lozman,* 585 U.S. 87, 101 ("the 'right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights.'"); *Nailon v. Univ. of Cincinnati*, 715 Fed. Appx. 509, 514 (6th Cir. 2017), *quoting Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008).

Further there is a clearly established right to make private requests to government officials for assistance, even verbally or informally. *Holzemer*, 621 F.3d 512, 519; *Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 528 (6th Cir. 2015). So is the right to dispute government actors. *Nailon*, 715 Fed. Appx. 509, 514.

70. Second, adverse action was taken against the Plaintiff, including, but not limited to: (i) the false public statements directed to and about the Plaintiff; (ii) the false arrest and charging of Plaintiff by Defendant Edwards, and at the direction of Defendants Beck, Grote, Navarre, and Thompson, all without probable cause and/or for matters that would not and have never incurred charges in the past within the City of Ludlow; (iii) the smear campaign that followed; and (iv) the extraordinary efforts taken by these same Defendants, in concert, to attempt to coerce the County Attorney to continue charges against the Plaintiff, all without probable cause, which charges the County Attorney, consistent with her ethical duty, ultimately dismissed with prejudice.

71. Clearly established law establishes the activities set forth in paragraph 70 are all adverse action. *Rudd v. City of Norton Shores*, 977 F.3d 503 (6th Cir. 2020) (false arrest and campaign of harassment); *Lozman*, 585 U.S. 87 (false arrest); *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477, (2022) (initiating criminal prosecution); *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) (public release of information meant to embarrass); *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997) (false statements to the media); *McElhaney v. Williams*, 81 F.4th 550 (6th Cir. 2023) (excluding from public events).

72. In all events, any one of the activities in paragraph 70 would deter a person of ordinary firmness from engaging in protected speech, and thus meets the adverse action requirement. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc).

73. Defendants Edwards, Beck, Grote, Navarre, and Thompson also conspired with each other to violate Plaintiff's First Amendment rights, as demonstrated by the efforts by all of them to have additional law enforcement posted at the August 28, 2025 meeting, prior to that meeting, to arrest Plaintiff, and in response to her speech, and by then electing to proceed with the retaliatory arrest, also rendering each of them liable for acts in furtherance of that conspiracy. *Rudd*, 977 F.3d 503, 512-513; *Beck v. Prupis*, 529 U.S. 494, 502-03 (2000). Specifically, Defendants Edwards, Beck, Grote, Navarre, and Thompson had a single plan: to retaliate against Plaintiff for her protected activities, including, without limitation, engaging in the activities set forth in paragraphs 19-24 that includes ginning up a false arrest of Plaintiff for her protected speech, publicly smearing Plaintiff with false statements about that event, illegally attempting to continue charges without probable cause, and harassing anyone perceived as siding with Plaintiff; Defendants Edwards, Beck, Grote, Navarre, and Thompson each shared in this general conspiratorial objective; and an overt act was committed in furtherance of the conspiracy, namely the false arrest and efforts to continue charges. They are thus all jointly and severally liable under a conspiracy theory.

74. Further, in addition to their personal facilitation and participation, as described herein, Defendants Beck, Grote, Navarre, and Thompson are liable under a failure to intervene theory because they observed or had reason to know that an illegal arrest without probable cause was going to occur in retaliation for speech, had reasonable opportunity to intervene, and they failed to intervene, in contravention of clearly established law set forth in *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).

75. Defendants Beck, Grote, Navarre, and Thompson are also liable under a supervisory theory of liability in that both "implicitly authorized, approved, or knowingly

acquiesced in the unconstitutional conduct of' Defendant Edwards, complained of herein, and thus the incident with Plaintiff was causally connected to their intentional acts and deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

**COUNT II**

**42 U.S.C. § 1983 — Fourth Amendment False Arrest / Unlawful Seizure**
**(Against Defendants Edwards, Beck, Grote, Navarre, and Thompson)**

76. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

77. Defendant Edwards seized and arrested Ms. Davenport without a warrant and without probable cause to believe she had committed the offense charged—KRS 519.020—or any other offense.

78. KRS 519.020 requires the use or threatened use of violence, force, or physical interference. Officer Edwards's own contemporaneous narrative describes none of those elements; it describes only speech, followed by Ms. Davenport walking away and complying with the officer.

79. Nor did probable cause exist for any alternative offense. Ms. Davenport's in-chamber speech was constitutionally protected; the lawful remedy for indecorous speech in a limited public forum is removal, not arrest; and Ms. Davenport had already removed herself from the meeting before she was seized, negating any inference of intent to prevent or disrupt the meeting.

80. Defendants Beck, Grote, Navarre, and Thompson caused, directed, participated in, encouraged, and/or ratified the unlawful seizure.

81. Defendants Edwards, Beck, Grote, Navarre, and Thompson also conspired with each other to violate Plaintiff's Fourth Amendment rights, as demonstrated by the efforts by all of them to have additional law enforcement posted at the August 28, 2025 meeting, prior to that meeting, to arrest Plaintiff without probable cause, and by then electing to proceed with the retaliatory arrest, also rendering each of them liable for acts in furtherance of that conspiracy. *Rudd*, 977 F.3d 503, 512-513; *Beck v. Prupis*, 529 U.S. 494, 502-03 (2000). Specifically, Defendants Edwards, Beck, Grote, Navarre, and Thompson had a single plan: to retaliate against Plaintiff for her protected activities, including, without limitation, engaging in the activities set forth in paragraphs 19-24 that includes ginning up a false arrest without probable cause of Plaintiff for her protected speech and illegally attempting to continue charges without probable cause; Defendants Edwards, Beck, Grote, Navarre, and Thompson each shared in this general conspiratorial objective; and an overt act was committed in furtherance of the conspiracy, namely the false arrest and efforts to continue charges. They are thus all jointly and severally liable under a conspiracy theory.

82. Further, in addition to their personal facilitation and participation, as described herein, Defendants Beck, Grote, Navarre, and Thompson are liable under a failure to intervene theory because they observed or had reason to know that an illegal arrest without probable cause was going to occur, had reasonable opportunity to intervene, and they failed to intervene, in contravention of clearly established law set forth in *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008).

83. Defendants Beck, Grote, Navarre, and Thompson are also liable under a supervisory theory of liability in that both "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Defendant Edwards, complained of herein, and

thus the incident with Plaintiff was causally connected to their intentional acts and deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

84. Defendants acted under color of state law and with intentional, malicious, reckless, or callously indifferent disregard of Ms. Davenport's clearly established Fourth Amendment rights.

85. As a direct and proximate result, Ms. Davenport suffered loss of liberty and the other injuries and damages described herein.

86. The arrest of Plaintiff by Defendant Edwards, and at the direction of Defendants Beck, Grote, Navarre, and Thompson, was without probable cause, and violated clearly established case law. *Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010); *Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012); *Lyons v. City of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) ("The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit."); *Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008) ("The law was therefore clearly established that arrests without probable cause violated the Constitution at the time of [the plaintiff's] arrest in 2004."); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005) ("It is beyond doubt that in 2001 'the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.'").

**COUNT III**

**42 U.S.C. § 1983 — Municipal Liability**
**(Against Defendant City of Ludlow)**

87. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

88. The constitutional violations alleged herein were caused by, and undertaken pursuant to, the policies, practices, customs, and decisions of the City of Ludlow, including:

(a) Decisions and ratifications by final policymakers. Chief Beck, City Attorney Grote, and Defendants Navarre and Thompson, all had and ensured law enforcement presence at the meeting on August 28, 2025, because of Plaintiff's social media activity, and with the intention to set up and cause a retaliatory, pretextual arrest of the Plaintiff. Each of the foregoing, particularly in light of the resignation of the Mayor the night before, were the final decision-makers. Chief Beck, the City's final policymaker for law enforcement, ratified the arrest and its retaliatory basis, both by approving and not intervening in the arrest the night of the incident, and then thereafter, including through his October 17, 2025 letter urging continued prosecution. City Attorney Grote, upon information and belief a final policymaker with respect to the legal direction of City affairs and the conduct of Council meetings, personally directed the warnings and participated in the removal and arrest decisions. Acting Chair Thompson participated in the removal decision as the presiding officer of the City's legislative body, likewise ratifying the arrest, and, again, Defendant Navarre caused additional law enforcement presence at the August 28, 2025 meeting, all with the intention to engage in First Amendment retaliation.

(b) An official policy of suppressing constituent criticism, as embodied in and evidenced not only by the actions of final policy-makers the evening of August 28, 2025, but even before that, by posting law enforcement at that meeting to arrest the Plaintiff, their critic, for her social media and criticisms, which included tracking of Plaintiff's social media activities before and at that meeting, and as demonstrated by their sponsoring and introducing legislation, including

Ordinance 2025-11, which is directed at suppressing protected speech for employees and officers of the City.

(c) A custom, practice, and atmosphere—fostered and tolerated by City policymakers—of treating open-records requests, social-media criticism, and public-comment dissent as misconduct to be deterred and punished, as reflected in the on-the-record statements of Defendant Thompson and City Administrator Smith, and further as demonstrated by the Defendants prior to the August 25, 2025 meeting, to include additional law enforcement presence for the purpose of arresting Plaintiff all of which occurred prior to that meeting.

89. These municipal policies, customs, ratifications, and final-policymaker decisions were the moving force behind the violations of Ms. Davenport's First and Fourth Amendment rights.

90. As a direct and proximate result, Ms. Davenport suffered the injuries and damages described herein, for which the City is liable.

91. Defendant, City of Ludlow is likewise liable for the foregoing First Amendment retaliation and the Fourth Amendment violations herein, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) for the foregoing First Amendment violations, because (i) the actions complained were done pursuant to an illegal official policy of the City; (ii) the officials with final decision-making authority ratified and/or directed the complained of illegal actions; (iii) the City had and may still have a policy of inadequate training or supervision, with respect to First Amendment retaliation; and (iv) the City had, at all times relevant hereto, and may still have a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

**COUNT IV**

**Kentucky Common Law — False Arrest and False Imprisonment**
**(Against Defendants Edwards, Beck, Grote, Navarre, Thompson, and the City of Ludlow)**

92. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

93. Defendants intentionally confined, detained, and restrained Ms. Davenport against her will and without legal justification, privilege, or probable cause.

94. The individual Defendants instigated, directed, participated in, and/or ratified the unlawful detention. The City of Ludlow is liable for the torts of its officers and employees committed within the scope of their employment; Kentucky municipalities do not enjoy sovereign immunity from tort liability.

95. As a direct and proximate result, Ms. Davenport suffered the injuries and damages described herein.

## COUNT V

**Kentucky Common Law — Malicious Prosecution**
**(Against Defendants Edwards, Beck, Navarre, Thompson, and the City of Ludlow)**

96. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

97. As set forth in *Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016): (a) a criminal proceeding was instituted against Ms. Davenport; (b) the proceeding was instituted and continued by, or at the instance of, Defendants Edwards, Beck, Navarre, and Thompson; (c) the proceeding terminated in Ms. Davenport's favor by dismissal with prejudice on November 3, 2025; (d) Defendants acted with malice; (e) the proceeding lacked probable cause; and (f) Ms. Davenport suffered damages, including $2,500 in criminal defense fees, loss of liberty, emotional distress, humiliation, and reputational injury.

98. The City is liable for the conduct of its officers and employees committed within the scope of their employment.

## COUNT VI

### Kentucky Common Law — Abuse of Process (Pleaded in the Alternative) (Against Defendants Edwards, Beck, Grote, Navarre, and Thompson)

99. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

100. Defendants Edwards, Beck, Grote, Navarre, and Thompson employed criminal legal process against Ms. Davenport for an ulterior purpose—to punish, silence, and deter her protected criticism of City officials—and committed willful acts in the use of that process not proper in the regular conduct of the proceeding, including Defendant Beck's post-amendment lobbying of the County Attorney to continue a prosecution the prosecutor had identified as legally defective.

101. As a direct and proximate result, Ms. Davenport suffered the injuries and damages described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lori Davenport respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally as appropriate, and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for loss of liberty, emotional distress, humiliation, reputational injury, chilling of First Amendment activity, damages for the violations of her constitutional rights both economic, non-economic and otherwise, and out-of-pocket losses including criminal defense fees;

B. Punitive damages against the individual Defendants under 42 U.S.C. § 1983 and Kentucky law;

C. Nominal damages for the violation of Plaintiff's constitutional rights;

D. Reasonable attorney's fees and costs under 42 U.S.C. § 1988 and all other applicable law;

E. Pre-judgment and post-judgment interest as allowed by law; and

F. All other relief to which Plaintiff may be entitled.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Alexander F. Edmondson*
Alexander F. Edmondson, Esq.
EDMONDSON & ASSOCIATES
Attorneys at Law
28 West Fifth Street
Covington, Kentucky 41011
Telephone: (859) 491-5551
aedmondson@edmondsonlaw.com

/s/Christopher Wiest__________
Christopher Wiest (KY 90725)
Theodore J. Roberts (KY 100610)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
Tel: 513/257-1895
chris@cwiestlaw.com

*Counsel for Plaintiff Lori Davenport*